UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re: MQVP Inc.

                                 Debtor.      BANKR. CASE NO. 06-51141

_____/      Honorable Marci B. McIvor

                                             Adversary Proceeding 06-05635

MQVP, Inc.,

                    Plaintiff/Appellant,      CIVIL CASE NO. 07-11791

v.                                       HONORABLE PAUL V. GADOLA

                                             U.S. DISTRICT COURT

NATIONWIDE,

                        Defendant/Appellee.

_____/

## ORDER AFFIRMING THE DECISION OF THE BANKRUPTCY COURT

Debtor/Defendant MQVP, Inc. ("MQVP") appeals Bankruptcy Judge Marci B. McIvor's March 21, 2007 opinion and order that granted Appellee Nationwide's motion for summary judgment and denied MQVP's motion for summary judgment. For the following reasons, the Court will affirm the order of the bankruptcy court.

## I.    Background

The bankruptcy court amply set forth the background of this matter in its March 21, 2007 opinion and order:

> Plaintiff, MQVP, Inc., formerly known as Global Validators, tracks and monitors the aftermarket auto parts industry to insure that replacement parts used by auto repair shops are good quality. Defendant Nationwide Mutual Insurance company, used plaintiff's services to monitor the quality of aftermarket parts used in collision repairs covered by defendant's insurance polices. In the present complaint, plaintiff debtor contends that defendant owes additional fees pursuant to

the parties' original agreement.

The parties' relationship was governed by master consulting agreement Number 12058, [ the "master agreement" or agreement"] . . . which was executed in late September 2000 but retroactively effective . . . to September 15, 2000. According to the agreement, all changes or modifications needed to be made in writing. The master agreement was amended by Order Number 1, which was executed by the parties in late September 2000. Order Number 1 was amended by Addendum 1 to Order Number 1 [the "original contract"], which was executed by the parties in late April and May 2001. There were a couple of subsequent amendments to the master agreement, none of which are relevant to the facts of this case. . . .

On the subject of fees, the master agreement states that, "charges for the service to be provided to client, Nationwide, by vendor, MQVP, shall be as stated in the applicable order," end quote. Order Number 1 did not specify fees, but the Addendum 1 to Order 1 states, in relevant part, quote, "To administer MQVP among the parties, including client, manufacturers and distributors, client will pay vendor three percent of the price as supplied by the participating distributors of eligible MQVP parts specified on all nationwide, allied and/or affiliate company collision repair appraisals. Administration of MQVP is outlined in master consulting agreement Number 12058 effective September 15th, 2000, by and between client and vendor. Client shall pay this three percent administration fee for MQVP starting 9-12, 2000. . . . In order to facilitate invoicing, client and vendor will work jointly to create software that'll calculate the MQVP fees related to each particular claim filed with the client. Each party will assume the respective cost for the development of the software. The parties will enter in to a separate software development agreement for the creation of such software."

From September 2000 to June 2002, MQVP sent monthly invoices to defendant. [Each of the invoices submitted to the Court, for the months of May through July 2002] is for subscription fees in the amount of $138,000. There is no indication or explanation regarding total eligible MQVP parts or how the amount of the invoice was calculated or whether there was any balance due and owing.

On June 14, 2002, MQVP sent Nationwide the following letter,
"Thank you for your business commitment to MQVP. The program acceptance has developed to the point that we propose to adjust the monthly MQVP fees for Nationwide Insurance to $38,000 per month beginning with the August 2002 invoice. This fee level will remain through the balance of the contract period ending January 2003."

This letter is on Global Validators' stationary, now known as MQVP, with the Global Validators' letterhead and is signed by the president of the company.

From August 2002 through November 29th, 2004, MQVP sent monthly invoices to defendant for fees in the amount of $38,000 per month. Defendant paid

these invoices in full via electronic funds transfer. From December 20th, 2004, through July 15th, 2006, MQVP sent defendant monthly invoices for subscription fees in the amount of $39,000. Defendant paid those invoices in full via electronic funds transfer. Every month MQVP accepted Nationwide's payment of the invoices. . . . None of the invoices sent over a four-year period of time indicate that there are any amounts due and owing from Nationwide to MQVP. Nationwide terminated the master agreement on October 27th, 2006.

MQVP filed a voluntary Chapter 11 [bankruptcy] petition on August 17th, 2006. On October 13, 2006, the attorney for MQVP, as debtor-in-possession, sent a letter to defendant demanding payment of $2,700,923.09. The letter stated,

> Upon review of the payments made by Nationwide as a participating the MQVP program, I've discovered that Nationwide has not paid according to the contract provisions of your addendum to Order Number 1 to master consulting agreement Number 12058, "the agreement." Specifically, Nationwide is to pay three percent of the price of MQVP parts specified on all Nationwide, allied and affiliate company collision repairs. Nationwide has remitted a small flat payment, which is far exceeded each month by the amount due per the agreement. Full detail of the calculation and amount of the shortfall is provided in the attachments.

The detailed calculations attached to the letter does not disclose the basis for the amount allegedly claimed in the letter.

In response to the demand letter, defendant sent a copy of the June 14, 2002, modification letter to plaintiff by facsimile. According to plaintiff's brief, no one at MQVP had ever seen the letter before or knew of its existence. On October 20th, 2006, plaintiff filed the present adversary complaint alleging that Nationwide owes plaintiff over $2 million in unpaid fees under the master agreement. Defendant filed a counterclaim alleging breach of contract relating to certification of pricing advantage under the most favored nations provision of the contract. The counter claim also asserts set-off of damages and liquidation of an unsecured claim. The present cross-motion seeks summary judgment solely on plaintiff's claim for breach of contract related to unpaid fees.

*MQVP Inc. v. Nationwide Mutual Ins. Co.*, Hrn'g Tr., pp. 19-23, Mar. 20, 2007 (Bankr. E.D. Mich.)

(hereinafter "Tr.").

After hearing the parties' arguments and considering all the relevant facts, Bankruptcy Judge

McIvor granted Defendant Nationwide's motion for summary judgment. More specifically, Judge

McIvor held:

> [T]he undisputed facts in the instant case indicate that the original payment terms set forth in Addendum Number 1 to Order Number 1 were waived by plaintiff when plaintiff modified the contract in its June 14, 2002, letter to defendant Nationwide. That letter, coupled with the parties' subsequent course fo conduct for over four years, modified the original contract's payment terms; that is, a fixed monthly payment replaced the prior fee agreement which had contemplated a percentage fee.

Tr., pp. 24-25.

Judge McIvor continued, first concluding that under the terms of the contract, Ohio law controlled. Tr., p. 25. Considering each of the factors necessary for a waiver of a contractual right, *see Weaver v. Weaver*, 522 N.E. 2d 574 (Ohio Ct. App. 1987), Judge McIvor also concluded that (1) MQVP had conceded the existence of a valid contract and the right under the contract of Plaintiff to be paid fees calculated at three percent of the eligible MQVP parts; (2) MQVP did not contest that it had actual knowledge of that right under the contract; and (3) that "as a matter of law the express language of the waiver letter and plaintiff's conduct subsequent to the letter demonstrate an unequivocal intention to relinquish its right to fees on a percentage basis and accept a fixed monthly fee as the contractual method of payment." Tr., pp. 26-28. As a result of this analysis, the bankruptcy court found that "Under Ohio law, plaintiff . . . waived its right to collect fees in the manner specified under the original contract." Tr., p. 28.

On April 2, 2007, Plaintiff filed a "Motion for Reconsideration" of the bankruptcy court's grant of summary judgment in favor of Defendant. The Court denied the motion by written order on April 13, 2007.

Plaintiff filed a notice of appeal on April 24, 2007. Plaintiff's brief, submitted on June 20,

2007, asserts three arguments in favor of reversal of the Bankruptcy's Court's ruling. First, Plaintiff contends that the waiver of the written terms and conditions of the Agreement was unsupported by consideration. Second, Plaintiff argues that the bankruptcy court improperly shifted the burden of proof to Plaintiff instead of imposing it upon Defendant, the party seeking the waiver. As a corollary to this argument, Plaintiff also asserts that Defendant did not satisfy the clear and convincing standard of proof required for the waiver. Third, Plaintiff broadly asserts that the bankruptcy court abused its discretion by granting summary judgment even though material issues of fact remained in dispute.

## II.  Legal Standard

"District courts review a bankruptcy court's conclusions of law de novo." *In re McNamara*, 275 B.R. 832, 835 (E.D. Mich. 2002) (Gadola, J.). "A district court will not disturb a bankruptcy court's findings of fact, however, unless those findings were clearly erroneous." *Id. See also In re Charfoos*, 979 F.2d 390, 392 (6th Cir.1992). "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *United States Internal Revenue Service v. Mathews (In re Mathews)*, 209 B.R. 218 (6th Cir. B.A.P. 1997) *(quoting Anderson v. City of Bessemer City, North Carolina*, 470 U.S. 564, 573 (1985)).

Federal Rule of Bankruptcy Procedure 7056 makes Federal Rule of Civil Procedure 56 applicable in adversary proceedings. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id*. at 1435-36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id*. at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id*.; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. To create a genuine issue

of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *see Celotex*, 477 U.S. at 322-23; *Matsushita*, 475 U.S. at 586-87.

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D. Mich. 1990) (Gadola, J.), *aff'd*, 929 F.2d 701 (6th Cir. 1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

## III.    Analysis

Considering the present case, the evidence presented clearly demonstrated that MQVP waived the original percentage fee provision of the Master Agreement. Under Ohio law, a party waives a contractual right if it is demonstrated that the party had: (1) an existing right, benefit, or advantage; (2) knowledge, actual or constructive, of the existence of such right, benefit, or advantage; and (3) an actual intention to relinquish it or an adequate substitute for such intention. *See Gomez v. Huntington Trust Co., N.A.*, 2001 WL 1112690, at * 7 (N.D. Ohio 2005)(citing

*Weaver v. Weaver*, 522 N.E.2d 574 (Ohio Ct. App. 1987)). Although not explicitly stated by the bankruptcy court, where, as here, "the waiver is based upon an agreement, consideration is also necessary." *Parente v. Day*, 241 N.E.2d 280 (Ohio Ct. App. 1968)(citations omitted).

Plaintiff does not now appear to contest either of the first two elements for a waiver. However, Plaintiff argues that there was no evidence of an intention to relinquish the right to the percentage fee under the Agreement, and that there was no consideration. The Court disagrees with Plaintiff on each element. First, the bankruptcy court correctly concluded that Plaintiff actually intended to relinquish its right to the percentage fee under the Agreement. The modification unambiguously proposed to eliminate the percentage fee: "[W]e propose to adjust the monthly MQVP fees for Nationwide Insurance to $38,000 per month beginning with the August, 2002, invoice." The only fee that Nationwide was required to pay prior to receipt of the letter was the percentage fee. Therefore, adjusting the monthly fee to $38,000 per month could have only meant that the percentage fee was being eliminated in favor of a flat rate per month fee. The plain language of the letter can support no other interpretation.

Similarly, the parties' four years of conduct following the modification letter can only support the conclusion that the proposed modification was accepted by both parties. Each month following the letter, MQVP sent an invoice to Nationwide that reflected only the modified monthly fee as referenced in the modification letter. The invoices contained no other references to any other outstanding fees or any indication that the monthly fee was only a minimum payment to be applied to the amount owed under the original percentage fee. Significantly, for four years following the proposed modification, Nationwide paid the invoices that reflected only the modified monthly fee.

Plaintiff has not presented any evidence that it protested the amount of these payments. The record is entirely devoid of any evidence that MQVP "expected additional payments or that there was an ongoing dispute regarding the proper amount of the payments. . . ." Tr., p. 27.   Accordingly, there is no dispute with respect to the third element necessary for a waiver.  There remained no genuine issue of material fact with respect to this issue.

Furthermore, with respect to Plaintiff's argument that there was no consideration, the Court disagrees.  Although it is true that the bankruptcy court never used the magic word "consideration" in rendering its opinion, it is evident from the record that the court found the existence of consideration nevertheless.  The bankruptcy court explained:

> Had Plaintiff attempted to collect the percentage fee at any time after– well, really after June 200[2] when the letter was entered into or modified the contract, defendant could have attempted to renegotiate or terminate the contract.  Instead, plaintiff invoiced defendant for the flat fee and accepted defendant's payment of these invoices for four years. [Thus] there are no genuine issues of material conduct and [the] course of conduct constituted a proper modification of the original contract.

Tr., p. 29.

There is no dispute that Nationwide had the right to terminate the Agreement without cause upon 60 days written notice and that Nationwide forewent that opportunity in exchange for the modified monthly fee.  Thus, as the bankruptcy court correctly alluded to, Nationwide's forbearance from exercising its termination right granted a benefit to MQVP and therefore provided consideration for the modification.  *See Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 910 (6th Cir. 2006)(quoting *Ford v. Tandy Transp., Inc*., 86 Ohio App.3d 364, 620 N.E.2d 996, 1009 (Ohio Ct. App. 1993)("[E]ither a detriment to the promisee or a benefit to the promisor" suffices to

establish consideration under Ohio law.)).  As a result, MQVP's argument that there was no consideration supporting the waiver must be rejected.

Finally, MQVP's argument that the burden of proof was improperly shifted to Plaintiff is without merit.  As discussed above, Defendant amply supported its motion for summary judgment with evidence that of Plaintiff's waiver of the original percentage fee.  Once such a demonstration is made, "the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.  In the present case, Plaintiff failed to "present more than just some evidence of a disputed issue." *Matsushita Elec. Indus. Co..*, 475 U.S. at 586-87. Therefore, because Plaintiff failed to respond by submitting sufficient evidence such that a jury could return a verdict in its favor, *see  Anderson*, 477 U.S. at 252; *Cox*, 53 F.3d at 150, summary judgment in favor of Defendant was appropriate.

## IV.    Conclusion

After a review of the bankruptcy court's opinion and order, the briefs of the respective parties, and the corresponding bankruptcy record, this Court finds no error.  Judge McIvor carefully considered briefs and supporting evidence, considered the arguments made at the hearing on this matter, and correctly concluded that summary judgment in favor of Nationwide Mutual Insurance Company was appropriate.  A de novo review of the bankruptcy court's conclusions of law finds that Judge McIvor's determination and application of the law was sound.  Therefore, this Court will affirm the opinion and order of the bankruptcy court**.**

**ACCORDINGLY, IT IS HEREBY ORDERED** that, for all the reasons set forth above,

the order of the bankruptcy court, entered March 21, 2007, is **AFFIRMED**.

**SO ORDERED.**

Dated:     July 15, 2008                                    s/Paul V. Gadola
                                                            HONORABLE PAUL V. GADOLA
                                                            UNITED STATES DISTRICT JUDGE

<div style="border:1px solid black; padding:10px;">

Certificate of Service

I hereby certify that on    July 15, 2008     , I electronically filed the foregoing paper with the
Clerk of the Court using the ECF system which will send notification of such filing to the
following:
 Dawn R. Copley; Jay S. Kalish; Ronald E. McNulty; Hugh A. Woodrow                , and I
hereby certify that I have mailed by United States Postal Service the paper to the following non-
ECF participants: _____ .


                                                            s/Ruth A. Brissaud
                                                            Ruth A. Brissaud, Case Manager
                                                            (810) 341-7845

</div>